O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| SAMSON PONCE, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. L-04-84 |
| § | |
| JOE BORDEN; and UNION PACIFIC § | |
| RAILROAD, § | |
| § | |
| Defendants. § | |

## **OPINION & ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment as to all of Plaintiff's claims. [Doc. No. 36]. Upon due consideration of the pleadings, numerous responsive filings, and the governing law, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion.

### I.   PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff is a former employee of Defendant Union Pacific Railroad (UPR). [Doc. No. 34 at 2]. During the time period relevant to this litigation, Plaintiff worked for UPR under the direct supervision of Defendant Joe Borden. [Doc. No. 34 at 2-4].

Plaintiff alleges that Defendant Borden subjected Plaintiff to "severe, daily harassment on the basis of race." [Doc. No. 34 at 3]. Defendant Borden allegedly "would constantly curse" Plaintiff and verbally abuse him with statements such as: "[y]ou're in America . . . [d]on't be talking [fucking] Spanish . . . [w]e speak English here," or, when referencing the Plaintiff in conversations with other coworkers, Defendant Borden allegedly made statements including "[t]his [fucking] Mexican . . . [c]onsidering all the education he's got, he's not worth a [fuck] at

running trains"; and "[fuck] this Mexican . . . [h]e ain't nothing at running a train . . . [h]e's just like the niggers from Houston who are a bunch of monkeys." [Doc. No. 34 at 1-5].

Plaintiff also alleges that Defendant Borden, in making supervisory decisions, discriminated against Plaintiff on account of race. [Doc. No. 34 at 6]. Specifically, Plaintiff alleges: (1) that Defendant Borden manipulated the work schedule to require Plaintiff to work the graveyard shift "every period for six months . . . while all other management level employees rotated their shifts;" (2) that he received a lower bonus than other White employees who received an identical employee evaluation score; and (3) that Plaintiff was denied management level training on account of race. [Doc. No. 34 at 6].

In August 2003, Plaintiff filed a discrimination claim with the EEOC complaining of the above conduct. [Doc. No. 34, ¶ 12]. Plaintiff thereafter applied for a UPR management position in Eagle Pass, Texas, for which Plaintiff was not hired. [Doc. No. 344, ¶ 12]. Plaintiff alleges that UPR refused to hire him for the position as retaliation for his then pending EEOC complaint. [Doc. No. 344, ¶ 12]. According to Plaintiff, a UPR representative stated to him "[y]ou think you're getting very far by bad mouthing Borden and filing an EEOC claim against him . . . [y]our days in management are over . . . [y]ou're black balled from management and you'll never be a manager again." *Id*. at ¶ 12.

In his Second Amended Complaint, Plaintiff claims: (1) that Defendant UPR subjected him to a "racially hostile work environment" in violation of Title VII 42 U.S.C. § 2000(e); (2) that Defendant UPR subjected him to "racially motivated adverse employment action[s]" in violation of the same statute; (3) that Defendant UPR discriminated against him based on race in violation of 42 U.S.C. § 1981; (4) that Defendant took retaliatory action against Plaintiff for filing the aforementioned EEOC complaint, in violation of 42 U.S.C. § 12203; and (5) that both

Defendants are liable to Plaintiff for the state tort of intentional infliction of emotional distress. [Doc. No. 34, ¶¶ 13-16].

Defendants filed for summary judgment as to all of Plaintiff's claims on August 3, 2005. [Doc. No. 36]. On October 3, 3005, pursuant to 28 U.S.C. § 636(b)(1)(B), Defendants' Motion for Summary Judgment was referred to Magistrate Judge Adriana Arce-Flores for findings of fact and recommendations of law. [Doc. No. 45]. On March 22, 2006, Judge Arce-Flores issued her Report and Recommendation (Report) as to Defendants' Motion for Summary Judgment, which she recommended that the District Court GRANT IN PART and DENY IN PART. [Doc. No. 47].

On March 30, 2006, Plaintiff filed his objections to the Report, [Doc. No. 48], and on April 3, 2006, Defendants filed their objections. [Doc. No. 49]. The Court reviews *de novo* those portions of the Report to which specific objections have been made. 28 U.S.C. § 636(b)(1).

## II.    DISCUSSION

Federal Rule of Civil Procedure 56(c) provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of identifying specific portions of the record "which [it] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Id.* at 261.

The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Assuming no genuine issue exists as to the material facts, the Court will then decide whether the moving party shall prevail solely as a matter of law. *Id.* The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

**A. Statute of Limitations**

In her Report, the Magistrate Judge rejected Defendants' argument that Plaintiff's hostile work environment and race discrimination claims are time barred by 42 U.S.C. § 2000e-5(e)(1). Defendants object to this finding. [Doc. No. 49 at 2]. Accordingly, the Court reviews this claim *de novo*.

Defendants characterize their defense as one based on Plaintiff's "fail[ure] to exhaust administrative remedies." [Doc. No. 36-1 at 10]. In actuality, such a claim is properly read as a statute of limitations affirmative defense. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas, P.A.*, 139 F.3d 532, 537 (5th Cir. 1998) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982)); *see also United Transp. Union v. Florida E. Coast Ry. Co.*, 586 F.2d 520, 527 (5th Cir. 1978) (citing *White v. Padgett*, 475 F.2d 79 (5th Cir. 1973)) (characterizing a statute of limitations invocation as an affirmative defense). Accordingly, Defendants have the burden of

4

raising this defense, and of pointing to specific evidence that Plaintiff's claims are in fact time bared.

Under 42 U.S.C. § 2000e-5(e)(1), a charge under Title VII generally must be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. However, if the claimant initially institutes state or local proceedings, the claimant has until the earlier of three hundred days after the alleged unlawful employment practice, or within thirty days after receiving notice that the state or local agency has terminated the proceedings under state or local law. *Id*. The Fifth Circuit has interpreted this provision to hold that in a state such as Texas, which provides state or local administrative mechanisms to address complaints of employment discrimination, a Title VII plaintiff must file a discrimination charge with the EEOC within three hundred days after learning of the conduct which forms the basis of his complaint. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).

Plaintiff filed his Title VII complaint with the EEOC on September 3, 2003. [Doc. No. 36 Ex. 6]. Therefore, any claims arising before November 7, 2002, more than three hundred days prior to Plaintiff's EEOC filing date, would be time barred.

Defendants have offered little support for their limitations defense beyond bald assertions. In attempting to establish that Plaintiff's claims arose before November 7, 2002, Defendants point to Plaintiff's testimony that the alleged adverse employment acts *began* occurring "immediately after" Plaintiff began working under Defendant Borden on June 1, 2002. The phrase "immediately after" for present purposes tells the Court nothing, especially in light of the fact that the conduct is alleged to have occurred repeatedly throughout Plaintiff's employment. The Court is not obliged to sift through the record in order to flesh out Defendants' argument, *see Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003), and Defendants have failed to identify

*any* portion of the record in support of their limitations defense, as is their obligation.[1] *See Celotex*, 477 U.S. at 322.

Therefore, the Court at the outset rejects Defendants' argument that Plaintiff's claims are time barred.[2]

**B.  Hostile Work Environment**

In her Report, the Magistrate Judge found that Plaintiff's summary judgment evidence was insufficient to support his hostile work environment claim under Title VII. [Doc. No. 47 at 8]. Plaintiff objected to this finding. [Doc. No. at 3-7]. Accordingly, the Court reviews *de novo* Defendants' Motion for Summary Judgment as to this claim.

Title VII of the Civil Rights Act of 1964 provides that it is "an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "terms, conditions, or privileges of employment" for the purposes of Title VII include "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 22 (1993).

---

[1] As Defendants note in their Objection, Plaintiff did state that one alleged adverse act—his assignment to the graveyard shift—occurred in June 2002. [Doc. No. 49 at 4]. However, Defendants failed to raise this point in their Motion for Summary Judgment. Even if this fact could redeem Defendants' limitations defense, (which it likely could not,) it is within the discretion of the Court whether to consider evidence raised for the first time by way of that party's objections to a magistrate report. *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998). Just as this Court would have done had it adjudicated Defendants' Motion in the first instance, the Court now considers for the purposes of *de novo* review only that evidence included in the original Motion, and not arguments advanced via Defendants' Objection to the Report.

[2] The Magistrate Court's basis for rejecting Defendants' limitations defense was that Plaintiff established a "continuing violation," the showing of which allows a plaintiff to file an EEOC complaint more than 300 days after an alleged unlawful employment practice occurs. [Doc. No. 47 at 5, citing *Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1998)]. However, since the Court finds that Defendants have failed to offer evidence tending to conclusively show that Plaintiff's claims are time bared, there is no need for this Court to evaluate the correctness of the Magistrate Judge's analysis; it is enough that this Court agrees with her conclusion.

In recommending summary judgment, the Magistrate Judge concluded that "[a]lthough the comments made by Borden were offensive, they were not severe . . . Plaintiff has not shown evidence that Borden's actions were physically threatening nor has [he] shown how Borden's actions would interfere unreasonably with a reasonable person's work performance." [Doc. No. 47 at 7-8]. Plaintiff, in his Objection, argues that the Magistrate Judge applied the wrong standard. [Doc. No. 48 at 4]. Plaintiff argues that the Magistrate Judge treated the "physically threatening" and "interfere unreasonably" considerations as necessary elements of any hostile work environment claim. To the extent that the Magistrate Judge did so, the Court agrees that such was in error.

As the Report initially recognizes, the analysis as to whether a particular work environment may be deemed "hostile" requires that "all circumstances be taken into consideration." [Doc. No. 47 at 7]. Indeed, the Supreme Court has made very clear that the analysis "cannot be a mathematically precise test," *id.* at 22, and that whether a particular work environment is "hostile" "can be determined only by looking at all the circumstances," *id.* at 23. It was in this context—the context of emphasizing that no one factor controls the inquiry—that the Supreme Court stated that the "circumstances [to be considered by the district court] may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. In other words, although these considerations are usually, as a practical matter, of primary relevance, they do not amount to a conjunctive and complete elemental test. Rather, they are considerations that are to be weighed with all other circumstances in order to answer the ultimate question: whether the defendant has met his burden of showing that plaintiff's evidence cannot, as a matter of law, demonstrate that a reasonable person would

7

find the working environment in question abusive toward a class of persons protected under Title VII. *See Harris*, 510 U.S. at 21.

As a review of the relevant caselaw makes clear, in answering this dispositive question, courts must juggle and weigh various abstractions such as "abusive" and "severe," as well as attempt to clairvoyantly predict the perceptions of the infamously coy "reasonable person," all while remaining acutely cognizant of both legislative intent and governing precedent. Despite the admirable attempt by the Supreme Court and the Fifth Circuit to more precisely assign the central abstractions concrete meaning, ultimately the analysis is a very fact-sensitive one and, thus, the Court must look to the facts presented in cases heard on appeal by the Fifth Circuit and the Supreme Court in determining whether Defendants have met their burden.

One of the most commonly cited decisions in Fifth Circuit hostile work environment caselaw is that court's opinion in *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). There, the plaintiff alleged that the defendant's employees consistently made comments deriding African-Americans, such as comparing them to "slaves and monkeys." Additionally, coworkers would use the term "nigger," and make overtly racist jokes. *Id.* at 620-23. The offensive remarks began shortly after the plaintiff began working for the defendant, and continued for three years up to the plaintiff's resignation. *Id.* at 625. On appeal, the Fifth Circuit held that "viewing the evidence in the light most favorable to the appellants, they have created a genuine issue of material fact with respect to their claim of [a] hostile work environment." *Id.* at 625.

Conversely, the Supreme Court has made clear that a "mere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21. Thus, an example of conduct on the opposite end of the severity spectrum from *Walker* is the conduct alleged in *Long v. Eastfield*

8

*College*, 88 F.3d 300 (5th Cir. 1996). There, the plaintiff's "sole basis for her hostile work environment claim [was] an offensive joke concerning condoms which [her supervisor] told in her presence." *Id.* at 309. The court of appeals concluded that "the alleged joke . . . is exactly the type of mere offensive utterance which should not, by itself, support a claim for hostile work environment." *Id.* (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n.*, 51 F.3d 591, 595 (5th Cir. 1995) (finding that ten offensive articles in a police newspaper, several of which contained sexually derogatory references to the plaintiff, were insufficient to support a sexually hostile work environment claim)).

Of course, the cases most on point for present purposes are those at the margins. For example, in *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999), the plaintiff alleged a handful of incidences spanning two years, such as a co-worker commenting on the size of her thighs, the co-worker sliding his hand down the side of plaintiff's arm, or making statements like "your elbows are the same color as your nipples." This conduct, although "boorish and offensive," did not allege conduct sufficiently severe to support a Title VII claim. *Id.*

One common theme in the controlling appellate caselaw is that the conduct deemed insufficient in previous cases consisted of "offhand comments and isolated incidents" of offensive conduct. *See Shepherd*, 168 F.3d at 874. Indeed, the frequency of the conduct is one of the most important considerations in the analysis. *See*, *e.g.*, *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1049 n. 9 (5th Cir. 1996) (suggesting that routinely made racist remarks might raise a fact issue sufficient to prevent summary judgment). In this regard, it is interesting to note that many, if not all, of the cases Defendants rely on in arguing for summary judgment are cases that involved conduct that was sporadic such that it could not fairly be said to have characterized the

plaintiff's daily employment experience. *See*, *e.g.*, *McCrary v. DPC Industries, Inc.*, 942 F. Supp. 288, 292 (E.D. Tex. 1996) (summary judgment granted where the plaintiff alleged that, over the course of a year, a co-worker once called him "nigger," that his supervisor several times referred to him as "son," once told a racist joke, and made disparaging remarks about Malcolm X and Martin Luther King, Jr.); *c.f. Harvill v. Westward Communs., L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) (where the Fifth Circuit "made clear that isolated incidents, if egregious, can alter the terms and conditions of employment").

It is with this background of precedent that the Court evaluates the sufficiency of Plaintiff's evidence.

During the deposition of Plaintiff, the following exchange took place:

Q: All right. And do you think him responding to the way you have testified he responded [sic] was because—was any way related to your race?

A: Well, in several locations [sic], he said—he would tell me, "[c]ome on, goddamn Mexican, what the fuck, are you stupid or what . . ." and little comments like that, but that was every day I went to work.

Q: So it is your testimony [that] he called you [a fucking] Mexican every day?

A: Yes

Q: Every day for four months?

A: For the time—the whole time I was there

The exchange continued with Plaintiff quoting Defendant Borden as stating "[t]his fucking Mexican thinks he's got all these college degrees and he can, you know, run trains . . . [h]e's no good for running trails, he's just like the niggers from Houston, they're a bunch of monkeys."

10

[Dep. at 138]. Additionally, Plaintiff claims that a co-worker named Carlton Albrecht can specifically corroborate his claims that these incidences took place with regularity.[3]

In their Motion for Summary Judgment, Defendants do not deny that these statements were made. They argue only that these statements, as a matter of law, cannot form the basis for a verdict in Plaintiff's favor. The Court disagrees. First, assuming Plaintiff's allegations are true, the Court concludes that Defendant Borden's allegedly repeated reference to Plaintiff as a "fucking Mexican," especially within the context of Borden's alleged comparison of "niggers" to "monkeys," could be deemed derogatory by a reasonable person, and that such conduct could, given its alleged regularity, establish Plaintiff's former working environment as "hostile" in the eyes of a reasonable factfinder.

Second, as a strictly evidentiary matter, Plaintiff's deposition evidence is sufficient to support his claims at this stage in the litigation. *See Harvill v. Westward Communs., L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) ("We do not agree that [the plaintiff's] allegations are too conclusory to permit a fact finder to assess the totality of the circumstances . . . [w]hether her allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact"). Because it is arguably a close call, the Court concludes that the determination as to whether Plaintiff suffered from a hostile work environment is within the province of the jury. Therefore, the Court DENIES Defendants summary judgment as to this claim.

---

[3] In his Response to Defendants' Motion for Summary Judgment, Plaintiff has provided the Court with the deposition testimony of Mr. Albrecht. However, Plaintiff's Response was untimely, and the Magistrate Court concluded that Plaintiff could not show adequate cause for his tardiness. [Doc. No. 44]. The Court finds no error in this conclusion. Therefore, the Court will not consider Plaintiff's belatedly offered evidence in determining whether his claims can survive summary judgment.

**C. Disparate Treatment**

Plaintiff alleges that he was discriminated against based on his race in violation of 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981. The Magistrate Judge concluded that Plaintiff presented a genuine issue as to this claim. [Doc. No. 47 at 9]. Defendants objected to this finding and, accordingly, the Court reviews it *de novo*.

In order to prove disparate treatment under Title VII, a plaintiff must: (1) identify an ultimate employment decision made by the employer; and (2) establish a prima facie case that discriminatory animus motivated that decision. *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). First, "ultimate employment decisions" are those that have an immediate materially adverse effect on the terms and conditions of employment. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999). "Ultimate employment decisions" do not include actions which "*might* jeopardize employment in the future." *Mattern v. Eastman Kodak Co.*, 104 F.3d at 708.

Plaintiff claims that he received a lower bonus than other management level employees who received an identical score on their respective employee performance evaluations. [Doc. No. 34 at ¶ 9]. Defendants concede that, per this claim, Plaintiff alleges an "ultimate employment decision." [Doc. No. 49 ¶ 2]. Therefore, the only question is whether Plaintiff has presented a prima facie case that his "employer placed a substantial negative reliance on an illegitimate criterion" in rendering that decision. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1084-85 (5th Cir. 1994).

A plaintiff may establish a prima facie case of motivating racial animus through either direct or indirect evidence. *Id*. Direct evidence of employment discrimination "is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* "[A]

supervisor's open and routine use of racial slurs constitutes direct evidence 'that racial animus was a motivating factor.'" *Id.* (quoting *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). In *Brown*, the Fifth Circuit held that the employer's use of the term "nigger" constituted direct evidence of racial animus as a motivating factor in reaching the "ultimate employment decision." *Brown*, 989 F.2d at 862. *See also Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987) (calling an employee "nigger" may be direct evidence of discrimination); *Bibbs v. Block*, 778 F.2d 1318 (8th Cir.1985) (en banc) *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (selection committee member's characterization of plaintiff as a "black militant" and reference to another black employee as "nigger" was direct evidence of discrimination in failure to promote).

In the instant case, the Magistrate Judge concluded that "Borden's alleged use of the expression 'fucking Mexican' viewed in a light most favorable to Ponce constitutes direct evidence of racial animus." [Doc. No. 47 at 9]. Defendants argue that the Magistrate Judge's decision was incorrect because Plaintiff failed to show that someone similarly situated to him was treated more favorably. [Doc. No. 36-1 at 15]. However, Plaintiff must make this "similarly situated" showing only if he relies on *indirect* evidence to establish his prima facie case of discriminatory animus. *See Urbano v. Continental Airlines, Inc.* 138 F.3d 204, 206 (5th Cir. 1998). As already stated, Plaintiff has shown that he can establish his prima facie case through direct evidence.

Therefore, the Court agrees with the Magistrate Judge that Plaintiff has established a prima facie case of race discrimination via disperate treatment under Title VII. Therefore, the Court DENIES Defendants' Motion for Summary Judgment as to this claim.

Additionally, Plaintiff asserts a claim of race discrimination under 42 U.S.C. § 1981. The proof structure for a claim of race discrimination under Title VII is identical to that under § 1981. *Raggs v. Mississippi Power & Light*, 278 F.3d 463, 468 (5th Cir. 2002) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000); *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994)). Therefore, for the reasons state above, the Court further DENIES Defendants summary judgment as to Plaintiff's § 1981 claim.

### D. Retaliation

Plaintiff next claims that Defendant UPC illegally retaliated against him for filing a Title VII complaint with the EEOC. [Doc. Nos. 34 at 6, 36 at 6].

To successfully establish a prima facie retaliation claim, a plaintiff must show (1) that he engaged in activity protected by Title VII, (2) that his employer took an adverse employment action against him; and (3) that a causal link exists between the protected activity and the adverse employment action. *See Mattern*, 104 F.3d at 705. Once the plaintiff establishes a fact issue as to these three elements, the defendant then bears the burden of offering a legitimate non-retaliatory purpose for the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304-05 (5th Cir. 1996) (citing *McMillan v. Rust college, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)). Once the defendant offers evidence sufficient to support its non-retaliatory justification, the plaintiff must then present evidence that permits the conclusion that the offered non-retaliatory justification was merely a pretext for unlawful retaliation. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).

In her Report, the Magistrate Judge concluded that Plaintiff met his initial burden of establishing a prima facie case of retaliation. [Doc. No. 47 at 11]. Plaintiff filed an EEOC complaint, an activity protected by Title VII. Plaintiff was denied the management position at UPR's Eagle Pass, Texas location, an adverse employment action. The Magistrate Judge also found that the hiring manager was aware of Plaintiff's EEOC compliant at the time he made the decision not to hire Plaintiff, and that the hiring manager did not want to hire Plaintiff. [Doc. No. 47 at 11-12]. Accordingly, the Magistrate Judge found a causal link between Plaintiff's protected activity and the adverse employment action. [Doc. No. 47 at 12].

However, the Magistrate Judge thereafter concluded that Defendant UPC was able to advance a legitimate non-retaliatory reason for the adverse employment decision. [Doc. No. 47 at 12]. Supposedly, the hiring manager did not like the comments made by Plaintiff to the effect that he often knew better than his superiors, that he thought he would be needing time off in the future, and that Plaintiff did not like the way work shifts were assigned. [Doc. No. 47 at 12]. In addition, the hiring manager believed that Plaintiff would be a poor candidate for a long term career in Eagle Pass, Texas. [Doc. No. 47 at 12]. No objection has been raised to these findings, they are not clearly erroneous, and therefore the Court adopts them.

Plaintiff does, however, object to the Magistrate Judge's finding that he failed to produce evidence sufficient to rebut Defendants' offered non-retaliatory explanation. [Doc. No. 47 at 12]. Specifically, the Magistrate Judge concluded that Plaintiff could not adequately satisfy his burden because he could not show that the protected activity was the "but for cause" of the adverse employment decision. [Doc. No. 47 at 12]. Accordingly, the Court reviews this issue *de novo*.

The Magistrate Judge was correct in imposing the "but for" burden on Plaintiff. However, the Fifth Circuit has made clear that "[i]f the plaintiff presents evidence supporting the prima facie case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of this "but for" causation." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191-92 (5th Cir. 2001). In other words, the plaintiff need not offer direct evidence of "but for" causation, but rather can rely on evidence minimally sufficient to allow a reasonable factfinder to infer, based on the totality of the evidence, that the protected act was the "but for" cause of the adverse employment decision.

Plaintiff has not pointed to any evidence in the record that demonstrates that Defendants' proffered explanation is pretextual. Plaintiff offers only excerpts of depositions that were not timely filed, and therefore are not a part of the record. Accordingly, the Court GRANTS Defendants' Motion or Summary Judgment as to Plaintiff's retaliation claim.

### E.  Intentional Infliction of Emotional Distress

The Magistrate Judge found that Plaintiff failed to present sufficient facts in support of his intentional infliction of emotional distress claim. [Doc. No. 47 at 13].

As the Magistrate Court explained, "[w]here the gravamen of a plaintiff's compliant is really another tort, intentional infliction of emotional distress should not be available unless there are additional facts, unrelated to the harassment [claim], to support an independent tort claim." [Doc. No. 47 at 13 (Citing *Hoffman-La Roche, Inc. v. Seltwanger*, 144 S.W.3d 438, 448 (5th Cir. 2004)]. The Magistrate Judge further found that Plaintiff failed to allege facts beyond those supporting his race discrimination claims and, therefore, that summary judgment as to this claim was appropriate. [Doc. No. 47 at 13]. Plaintiff does not object to this conclusion, this Court sees

16

no clear error in it, and, thus, the Court adopts it. Accordingly, the Court GRANTS summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

### III.    CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's hostile work environment and race discrimination claims under Title VII and § 1981, and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation and intentional infliction of emotional distress claims.

IT IS SO ORDERED.

Done this 23rd day of August, 2006, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**